FILED

2012 Nov-19  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE:  CHANTIX (VARENICLINE) PRODUCTS LIABILITY LITIGATION | Master File No.: 2:09-CV-2039-IPJ MDL No. 2092 |
| **THIS ORDER RELATES TO**: Katharine McClellan, individually and as personal representative for the estate of Sandra Corey, deceased | **CASE NO.**: 2:10-cv-724-IPJ |

## MEMORANDUM OPINION and ORDER

Pending before the court is the defendant's motion for summary judgment (doc. 21), the plaintiff's response (doc. 28) and the defendant's reply (doc. 37). This case is one of many in the above styled multi-district litigation in which users of the prescription drug Chantix have sued Pfizer, Inc., the manufacturer of the drug, alleging a wide range of physical and mental injuries from the use of the drug.  In this specific action, the plaintiff alleges that the decedent committed suicide because of her use of Chantix, an aid in smoking cessation.  The defendant denies that Chantix in any manner was the cause of decedent's suicide.  The parties agree that Oregon substantive law, and federal procedural law, govern this action.

With this background, the court considers the pending motion for summary judgment.

The defendant alleges that a lack of evidence that the decedent, Sandra Corey, actually took Chantix requires the court to enter judgment in its favor.  The plaintiff disputes that the evidence is so lacking.  The parties agree that this case is governed by Oregon substantive law.  The following undisputed facts are relevant:

The decedent was first prescribed Chantix, by Dr. Randall Currier, in September 2007.  That first prescription was not filled, but subsequent ones written by Dr. Currier in October 2007 were filled.  Plaintiff exs. H and I.  The plaintiff switched doctors after that.  In June 2008, she received another prescription for a Chantix starter pack and had that prescription filled.  Plaintiff exs. H and I.  On July 24, 2008, Ms. Corey committed suicide.  The police collected all prescription medications from decedent's home, but failed to inventory or retain the same.

Based on these facts, the defendant asserts there is no evidence that Ms. Corey actually took Chantix in the time period preceding her death, while the plaintiff asserts there is sufficient evidence that Ms. Corey took Chantix during that same time.

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In making this determination, the

court must draw all reasonable inferences in favor of the nonmoving party. *Id*. An issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004). The non-moving party, meanwhile, must make a sufficient showing on each essential element of his case for which he has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

As stated, the court must apply Oregon substantive law to the facts of this case.  Pursuant to Oregon law, a plaintiff must establish that the injuries in question resulted from the use of the manufacturer's product.  *Phelps v. Wyeth, Inc.*,  857 F.Supp.2d 1114, 1129 (D.Or.2012); citing *McEwen v. Ortho Pharma. Corp.*, 270 Or. 375, 407, 528 P.2d 522 (1974).  *See also Glover v. BIC Corp.*, 6 F.3d 1318, 1327 (9th Cir.1993). ("[N]egligence and strict products liability [claims] require the plaintiff prove a causal connection between the alleged negligence or defective product and the injuries sustained by the plaintiff.").  Thus, the issue of whether the decedent actually ingested Chantix is a wholly factually, material dispute.

The evidence shows that when the decedent went to her doctor on June 20, 2008, she was prescribed Chantix, and her pharmacy records reflect that she had

this prescription filled the same date.  Defendant exs. D and E.  Upon return to her doctor's office on July 9, 2008, there is a notation of "Medication List: Reviewed None Changed."  Plaintiff ex. A.  The police report of July 24, 2008, generated due to Ms. Corey's death, notes that "during the investigation of above suspect's death, I took her prescription meds into evidence to be destroyed, (see attached PIR)."  Plaintiff ex. B.  The deputy explained that prescription medications are seized and destroyed to keep them off the street.  Plaintiff ex. D, at 18-19.  Because the decedent's death was not believed to be a drug overdose, no inventory of the pills seized was done.  *Id.*, at 19.

The medical examiner's report lists some medications for plaintiff, but not Chantix, although the report contains no reference to where information for the medications listed was obtained.  *See* defendant ex. I.  She was noted to be a "current 'heavy' smoker" in that report.  *Id.*   Her death was determined to be suicide from a self inflicted gunshot wound, and no autopsy was performed, nor were any laboratory tests run.  *Id.*

Dr. Randall Currier had been decedent's treating physician, but he last saw Ms. Corey on October 24, 2007.  Currier depo. at 15, submitted as plaintiff ex. G.  In September 2007 he prescribed Chantix for her as well as discussing other medical issues she had.  *Id.*, at 71; *see also* plaintiff ex. H.  Dr. Currier noted that

the decedent suffered from a mood disorder and had prescribed an antidepressant. Currier depo. at 72.  At an October 2, 2007, follow-up visit, Dr. Currier learned decedent had lost the prescription for Chantix and therefore wrote her another one. *Id*., at 86-87; plaintiff ex. H.  At her return visit on October 24, 2007, Ms. Corey reported she was taking Chantix and had reduced her cigarette use. Currier depo. at 88; plaintiff ex. H.  After that visit, Dr. Currier received a request for the decedent's records from Dr. Thomas Margulies and did not see or treat Ms. Corey again.  Currier depo. at 98.  Dr. Currier described the decedent as someone who was medically compliant, and who would make a good faith effort to take medication as and when prescribed.  *Id*., at 100.

Dr. Margulies first saw the decedent on March 10, 2008.  Margulies depo. at 58, submitted as plaintiff ex. J.  At her June 20, 2008, follow up appointment, he added a prescription for Chantix to her other medications.  *Id.*, at 92-93.  At that time, he noted her mood, affect and attention span to all be normal.  *Id.*, at 93.

Joanne Brodeur described the decedent as "tough" and someone who could "pull through anything."  Brodeur depo. at 24, submitted as plaintiff ex. K.  She added that suicide "that wasn't Sandy.  Because what I know of Sandy, that would have been the last thing ever.  Never would she have ever.... She was just tough." *Id.*, at 30.  Ms. Brodeur had no knowledge concerning whether the decedent was

using Chantix, but did know that Ms. Corey was truing to quit smoking. *Id.*, at 47.

The decedent's daughter echoed the same sentiment, that "[n]obody could belief that she wold do this." Katharine McClellan depo. at 41, submitted as plaintiff ex. L. She was suspicious about her mother's death because "it wasn't like her" to commit suicide. *Id.*, at 71. Prior to her death, Ms. Corey told her daughter that she was taking Chantix, that "it was one of her new drugs. She was going to quit smoking. She was really adamant about quitting." McClellan depo. at 252. In fact, Ms. Mclellan testified that the decedent told her she was taking Chantix. *Id.*, at 253.

As previously stated by the court, the issue of whether the decedent actually took Chantix after receiving a prescription for it, having the prescription filled, and telling her daughter she was taking it, is a question of fact. At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party, that being the plaintiff. *Alexander v. Fulton County*, 207 F.3d 1303, 1335 (11th Cir.2000). The Supreme Court has counseled:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes*, 398 U.S., at 158-159, 90 S.Ct., at 1608-1609.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

Based on the foregoing, the court finds that whether the decedent actually ingested Chantix is solely a question of fact for a jury's consideration.  The court therefore being of the opinion that the defendant's motion for summary judgment is due to be denied;

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment (doc. 21) be and hereby is **DENIED**.

**DONE** and **ORDERED** this the 19th day of November, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE